(June 17, 1908.)

## AGNES LORETTA DAY, Appellant, v. EUGENE RUFUS DAY, Respondent.

[96 Pac. 431.]

DIVORCE—ALLOWANCE PENDENTE LITE.

1. Under the provisions of sec. 2472, Rev. Stat., "While an action for divorce is pending, the court may, in its discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself or her children, or prosecute or defend the action."

2. This statute empowers the court, during the pendency of the action, upon a proper showing made by the wife for that purpose, to compel the husband to provide her with the means necessary to enable her to prosecute or defend the action.

3. The object and purpose of alimony, *pendente lite,* is to assist the wife in maintaining herself until the termination of the suit, and the amount should be adequate for this purpose and be governed by the needs of the wife.

4. No uniform rule can be announced for the guidance of the court in determining the amount of alimony *pendente lite,* as each particular case must be decided upon the facts and circumstances as they appear from the pleadings and proofs.

5. In determining the amount of allowance, the court should take into consideration the wealth and social standing of the parties, their manner of living, the present available means of the wife, and the ability and income of the husband, her health and probable needs while the suit is pending, as well as all other circumstances which may aid the court in determining the amount necessary to maintain the wife during the suit, according to her former manner of living.

6. Where the marriage of the parties is admitted, in determining the amount of alimony the court should attempt to place each party in that position that neither should have the advantage of the other, in waging the suit or in presenting the evidence to prove or disprove the falsity of the allegations made.

7. Where the marriage is admitted, and the evidence shows that for seven months prior to the marriage the husband paid the plaintiff, who afterward became his wife, $200 monthly as an allowance, and for the month immediately preceding the marriage $500, and expended upon their wedding tour about six months $4,000, and for jewelry and clothing $3,000 between January and

July after the marriage, and the further sum of $2,700 for a home for the plaintiff, and is worth $600,000, and has an income of not less than $16,600 per annum, and where the charge of the plaintiff against the defendant is extreme cruelty, denied by the defendant, and a cross-complaint is filed by the defendant against the plaintiff also charging extreme cruelty, which is denied, and such charges are made in detail so that the complaint and the answer to the cross-complaint embrace seventy pages of the printed transcript, and the answer and the cross-complaint embrace ninety pages of the transcript, said pleadings containing charges of crimination and recrimination in both the complaint and cross-complaint, the court abused its discretion in only allowing the plaintiff $800 for counsel fees, $600 for suit money and $100 per month alimony.

8. *Held*, under the facts stated above, that a proper and fair allowance to the plaintiff for counsel fees, *pendente lite*, is $4,500, for suit money $2,000, and for alimony $250 per month.

(Syllabus by the court.)

APPEAL from an order of the District Court of the First Judicial District in and for the County of Shoshone. Hon. Edgar C. Steele, Judge presiding.

An application for an allowance of counsel fees, suit money and alimony *pendente lite*. Order reversed and costs awarded to appellant.

F. C. Robertson, and H. P. Knight, for Appellant.

The respondent, being a man of large means, has employed an array of the ablest counsel in the state to defend against the appellant's suit; has employed numerous detectives and other persons to be used in the preparation of his case, and has filed a cross-complaint in this action the nature of which makes it absolutely necessary for the appellant to prepare her case most thoroughly for trial. To properly prepare her case and to meet the allegations of the respondent's pleadings, as well as to sustain her own pleadings, will require a very large expenditure of money.

As to the question of alimony, the appellant is a woman who, during her married life and prior thereto, by reason of the wealth and position of the respondent, became accustomed,

not only to all the comforts, but also to the luxuries of life, a woman shown by the record to be well educated and accustomed to move in the best circles of society in the community in which she lives.

The measure to be used in determining the amount of alimony, counsel fees and suit money to be allowed in cases of this kind, is not so much the bare necessities of the wife as it is the ability of the husband to make the provision.

In a case of this magnitude, involving issues which are so personal, and which it is so necessary for the appellant to meet and combat in order to protect her good name, the court should go further than bare necessities, and should be liberal enough in their allowance to permit the appellant to have all reasonable means at her command for the purpose of preparing and presenting her side of the controversy. (*Forrest v. Forrest,* 25 N. Y. 501; *Jones v. Jones,* 2 Barb. Ch. 146; *Lynde v. Lynde,* 4 Sand. Ch. 373; *Hammond v. Hammond,* 1 Clarke's Ch. 153; *Cralle v. Cralle,* 84 Va. 198, 6 S. E. 12; *Grundy v. Grundy,* 11 Okl. 423, 68 Pac. 509; *Cairns v. Cairns,* 29 Colo. 260, 93 Am. St. Rep. 55, 68 Pac. 233; *Hart v. Hart,* 31 Colo. 333, 73 Pac. 35; *Pleyte v. Pleyte,* 25 Colo. 125, 25 Pac. 25; *Kowalsky v. Kowalsky,* 145 Cal. 394, 78 Pac. 877; *Anderson v. Anderson,* 137 Cal. 225, 69 Pac. 1061; *Gay v. Gay,* 146 Cal. 237, 79 Pac. 885; *Lacey v. Lacey,* 108 Cal. 45, 40 Pac. 1056; *Bordeaux v. Bordeaux,* 30 Mont. 36, 75 Pac. 524; *Mitchell v. Mitchell,* 39 Wash. 431, 81 Pac. 913; *Read v. Read,* 28 Utah, 297, 78 Pac. 675; *Roby v. Roby,* 10 Ida. 139, 77 Pac. 213; *Bedal v. Sake,* 10 Ida. 270, 77 Pac. 638, 66 L. R. A. 60.)

Allowances for temporary alimony, attorneys' fees and suit money should be adequate for an efficient preparation and prosecution of the suit, and the allowance for alimony should be a reasonable amount sufficient to support and maintain the applicant according to her station in life. It should be reasonable in view of all the circumstances of the case. (14 Cyc. 757, 765; *Cooper v. Cooper,* 185 Ill. 163, 56 N. E. 1050.)

Natural justice and the policy of the law alike demand that in any litigation between husband and wife, they shall have

equal facilities for presenting their case before the tribunal. (2 Bishop on Marriage and Divorce, sec. 976.)

Temporary alimony should be to a great extent determined by the husband's fortune, and where his income is large and his manner of living liberal, a correspondingly liberal but not extravagant amount will be allowed. (*Ellis v. Ellis,* 2 Weeky. Not. Cas. 49; *Beers v. Beers,* 4 Lanc. (Pa.) 154.)

In determining the fee to be allowed the wife's attorney in divorce, the court will look both to the pecuniary ability of the husband and the character of the services. (*Gordon v. Gordon,* 6 Ky. Law Rep. 439.)

The ordinary rule of temporary alimony is to leave the wife about one-fifth of the joint income, deducting, of course, the income from the wife's separate estate. This is regarded as a fair medium, though the proportion will vary according to circumstances. (Bishop on Marriage and Divorce, sec. 460; Stewart on Marriage and Divorce, sec. 388; Brown on Divorce and Alimony, 4th ed., 175; *Williams v. Williams,* 29 Wis. 517; *Harding v. Harding,* 144 Ill. 588, 32 N. E. 206, 21 L. R. A. 310.)

C. W. Beale, John H. Wourms, W. E. Borah and C. L. Heitman, for Respondent.

The wife is not entitled to an order requiring the husband to pay her a sum of money for counsel fees where counsel have agreed to render their services gratuitously. (*Mudd v. Mudd,* 98 Cal. 320, 33 Pac. 114.)

Counsel fees for past services are not necessary to enable the wife to prosecute her suit, and an allowance of them is erroneous. (*Lacey v. Lacey,* 108 Cal. 45, 40 Pac. 1056.)

The wife is not entitled to be reimbursed *pendente lite* at the court's discretion for moneys raised on her credit and already expended as money necessary to enable her to prosecute the action. (*Lovern v. Lovern,* 100 Cal. 493, 35 Pac. 87.)

If it appears that the suit is not instituted in good faith to secure a divorce, but merely for the purpose of collecting money from the husband, or to compel him to support her, neither alimony *pendente lite* nor attorneys' fees will be al-

lowed. (14 Cyc. Law & Proc. 754 (d); *Kirrigan v. Kirrigan,* 15 N. J. Eq. 146; *Bradford v. Bradford,* 80 Miss. 467, 31 South. 963.)

No allowance of temporary alimony should be made if it appears from the record that the suit of the applicant, or the defense interposed by her, as the case may be, is without any just or reasonable foundation, so that there is no probability of her success. (14 Cyc. 753 (c); 17 Cent. Dig. 806, sec. 617; 2 Am. & Eng. Ency. of Law, 2d ed., 101; *Glasser v. Glasser,* 28 N. J. Eq. 22.)

The amount of money or property that the defendant may have is not a test or criterion in fixing the number of plaintiff's attorneys that shall be paid by the defendant, or the amount which they shall receive. (*Schulz v. Schulz,* 128 Wis. 28, 107 N. W. 302; *Rogers v. Rogers,* 103 Ga. 763, 30 S. E. 659.)

STEWART, J.—This is an appeal from the following order:

"It is hereby ordered that the defendant Eugene Rufus Day pay to the clerk of the district court in and for Shoshone County the sum of $800 attorneys' fees, said $800 to be paid on or before the 20th day of July, 1907, to the clerk of the district court in and for the said county and to be receipted for by the said clerk, and the said money to be paid to the attorneys of record for the plaintiff upon the said attorneys giving to the said clerk a receipt therefor.

"And it is further ordered that the said defendant Eugene Rufus Day pay to the clerk of the district court the sum of $600, to be used to pay costs, and that the said $600 be paid to the clerk of the district court of said county on or before the 20th day of July, 1907, the clerk of the district court giving his receipt therefor, and the said $600 to be paid out by the said clerk upon the order of this court, only, said order or orders to be made from time to time as the necessities may require, and to be made to the court by the attorneys for the plaintiff, stating what the money is desired for, said application not to be served upon the defendant, or upon the de-

fendant's counsel, and the said attorneys to account to the court in writing for the moneys so obtained, said account or accounts to be filed with the clerk of the district court in and for Shoshone County, any portion of the $600 remaining to be returned to the defendant.

"And it is further ordered that the said defendant, Eugene Rufus Day, pay to the said clerk the sum of $150, and that the same be paid on or before the 20th day of July, 1907, the same to be as alimony for the plaintiff, and to be paid to the plaintiff upon the plaintiff signing the receipt therefor to the clerk. And it is also ordered that on or before the 20th day of each calendar month thereafter, until this case is tried the defendant pay to the clerk of said court the sum of $100 as alimony to be paid to the plaintiff, and the same to be paid by the clerk to the plaintiff upon her giving her receipt therefor.

"Of this order the clerk of the said court will make a certified copy and deliver the same to the sheriff of Shoshone County and the sheriff of said county will serve the same personally upon the said defendant, Eugene Rufus Day, at the earliest possible moment and the parties affected by this order will obey the same in all respects and fail not at their peril.

"Done in open court this 6th day of June, 1907.

"EDGAR C. STEELE,

"District Judge.

"Filed June 20th, 1907."

The appellant assigns as error:

"1st. That the court erred and abused the discretion in it vested by denying the application of the appellant for $25,000 counsel fees, $10,000 suit money and $25,000 temporary alimony.

"2d. The court erred and abused the discretion in it vested in not allowing a reasonable sum as attorneys' fees, and a reasonable sum as suit money, and a reasonable sum as temporary alimony."

These two specifications of error may be considered together.

A proceeding was commenced on the 9th day of December, 1905, by the appellant against the respondent, to obtain a divorce on the ground of extreme cruelty, and a settlement of the property rights of said parties. Thereafter the respondent answered and filed his cross-complaint, demanding a divorce from the appellant on the same grounds. The appellant answered the cross-complaint, thus putting in issue the material allegations of both the complaint and cross-complaint. Thereafter the appellant filed a motion for a change of place of trial. The motion was made upon the ground that she could not have a fair and impartial trial before the presiding judge on account of his prejudice in the matter. The motion was denied by the trial court and an appeal was taken from said order to this court, which overruled the trial court and ordered a change of venue to be granted, or that some other judge be called in to try said case.

This court, upon appeal, allowed the plaintiff's counsel $1,500 as counsel fees. (*Day v. Day,* 12 Ida. 556, 86 Pac. 531.) Upon a reversal of said case, Hon. Edgar C. Steele, Judge of the second judicial district of the state of Idaho, was, by stipulation of the parties, called in to preside at said trial. Thereafter the appellant gave notice that on a certain date she would move the court for an allowance of $25,000 as counsel fees, $10,000 as suit money and $25,000 as alimony. This motion was heard on June 4, 1907, and on June 6, 1907, the court made the order above set forth and from which this appeal is taken.

It appears from the record in this case that the plaintiff and defendant intermarried at Mullan, Idaho, on January 24, 1905; that shortly after the marriage they started upon their wedding trip from Wallace, Idaho, by way of Spokane, Portland, San Francisco, Los Angeles, San Jose, and for a trip through the Hawaiian Islands, from which trip they returned on or about April 7, 1905.

The allegations of the complaint are specifically denied by the answer, and in addition, the defendant filed a cross-complaint, alleging certain acts of cruelty on the part of the plaintiff occurring at the several places visited throughout said

marriage trip. The complaint and the answer to the cross-complaint embrace seventy pages of the printed transcript, and the answer and the cross-complaint embrace ninety pages of the transcript. Charges of crimination and recrimination are made in both the complaint and cross-complaint.

It will thus be seen that the questions sought to be presented by the pleadings are acts of cruelty upon the part of both parties to the suit, running throughout the journey from Spokane, Washington, to the Hawaiian Islands and return. To prove the allegations of the complaint will necessarily require the gathering of evidence at many places visited on said wedding trip. Likewise, to prove or disprove the allegations of the cross-complaint will require the same effort.

It further appears that the respondent has, so far, employed five of Idaho's most able members of the bar, and that the appellant has employed three of Idaho's most able members of the bar. From the charges made in the complaint and cross-complaint, it appears that much detail testimony will be required, and no doubt much time and expense will be required in procuring the same.

It is further shown by the record that the respondent has employed a number of detectives for the purpose of securing testimony against the appellant in this case; that the defendant is a man of means, worth at least $600,000 and that his income is not less than $16,600 per annum or more than $84,000 per annum.

With this showing made to the trial judge, and which is presented to this court for review, it is contended upon the part of the appellant that the court abused its legal discretion in not making greater allowance for counsel fees, suit money and alimony. The respondent, in his answer, admits that his annual income is $16,600, and alleges that, since his marriage with the appellant, he has expended over $4,000 upon his said wedding trip and over $3,000 in jewelry and clothing, and in maintaining and providing a comfortable home for the appellant the sum of $2,700; that prior to said marriage, during a sickness of the appellant, he expended over $2,500 in physicians' and nurses' fees, and in addition thereto,

commencing with the month of April, 1904, gave said appellant a monthly allowance of $200 in cash for each and every month beginning with said month of April, 1904, and ending with the month of November, 1904, both months inclusive and for the month of December, 1904, paid to the appellant for her allowance the sum of $500.

Thus, it will be seen that, before the marriage of plaintiff and defendant, the respondent paid plaintiff from April to November, inclusive, 1904, an allowance of $200 per month and for the month of December (the month immediately prior to their marriage) the sum of $500. According to the showing made by the defendant himself, he was most generous to the plaintiff immediately before their said marriage; he expended a large sum of money on his wedding tour, during all of which time each was guilty of cruel acts toward the other, which, as claimed by the allegations in the complaint and cross-complaint, entitle each to a divorce.

The question is: Did the trial court abuse its discretion in fixing the amount for counsel fees, suit money and temporary alimony? Sec. 2472, Rev. Stat., provides:

"While an action for divorce is pending, the court may, in its discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself or her children, or to prosecute or defend the action."

This statute empowers the court, during the pendency of an action, upon a proper showing made by the wife for that purpose, to compel the husband to provide her with the means necessary to enable her to prosecute or defend the action. 2 Nelson on Divorce and Separation, sec. 859, announces the general rule to be as follows:

"The object in granting this kind of alimony is to assist the wife in maintaining herself until the termination of the suit; and the amount should be adequate for this purpose. The amount must be governed by the needs of the wife. If she is accustomed to support herself and is doing so in a manner suited to the circumstances of the parties, there is no necessity for this allowance. If her means are not adequate, the temporary alimony must be sufficient to supply the

deficiency. The amount varies with her needs. If she is accustomed to a moderate style of living, the amount should not be greater than will support her accordingly, although the husband has a large income. Unless the wife is profligate or has been living beyond her husband's means, she should be allowed sufficient means to continue her accustomed mode of living during the suit. No specific rules have been formulated or followed by our courts in fixing this amount. And in the nature of the case no definite proportion should be adopted, since the court must consider the wealth and social standing of the parties, their manner of living, the present available means of the wife and the ability and income of her husband, her health and probable needs while the suit is pending, and many other circumstances; and from all these the court may estimate what amount, if any, will be necessary to maintain her in a suitable manner during the litigation. Perhaps the most satisfactory rule is that the amount must be sufficient to enable the wife, in addition to her own means, to maintain herself during the suit according to her former manner of living.''

Many authorities are cited by counsel in their briefs, dealing with the subject of allowance for counsel fees, suit money and alimony in divorce proceedings. Each of those cases, however, is decided upon the particular facts of the case, and no uniform rule is announced for the guidance of the court. It is impossible to announce or fix any recognized rule to govern the court in determining this matter, as each case must be controlled by the particular facts shown. (14 Cyc. 764.)

In this case the marriage of the parties is admitted, and the pleadings present the issue of cruelty upon the charge of each against the other. The court, therefore, in determining the question of attorneys' fees, alimony and suit money, should attempt to place each party in that position, that neither should have advantage over the other in waging the suit, or in determining the truth or falsity of the allegations made. The record clearly establishes the fact that the appellant is without any means whatever; that she has no property or money

to employ counsel, support herself, or secure testimony to
prove the allegations of the complaint or meet the allegations
of the cross-complaint.   Upon the other hand, it is shown
that the respondent is worth at least $600,000; that his in-
come per annum is not less than $16,600, and may be $7,000
per month, as claimed by appellant.   It is apparent, there-
fore, that the respondent has a very great advantage over the
appellant in being able to prepare his case, in so far as finances
are concerned.   They should be on an equality and have the
same ability to meet the charges and counter-charges made.
This court takes judicial knowledge of the fact that both sides
have made their selection of counsel from the ablest and most
skillful members of the bar of this state.   The showing made
clearly establishes the fact that the respondent is able to pay
his counsel a fair and just compensation for their services;
that the appellant is unable to pay her counsel anything.
They must volunteer their services, or secure compensation
through friends and relatives of the plaintiff, unless the
court make a proper allowance therefor.   The order of the
trial court allows $800 to pay plaintiff's counsel.   In deter-
mining the sufficiency of this sum, the court will not inquire
as to what counsel would be entitled to upon a final disposi-
tion of the case, or what would be a fair and just compensa-
tion for such services throughout this entire case.   That is a
matter to be determined upon final judgment.

This court, like the trial court, is called upon to determine
what is a fair and reasonable compensation for plaintiff's
counsel in preparing the case for trial, in view of the cir-
cumstances surrounding this case, and to place the plaintiff
upon an equality with the respondent in furnishing her proper
legal assistants who are able to make the same careful prepara-
tion that will be made by counsel for respondent.   It appears
from the record that the fight began upon the day following
the marriage and continued with unabated energy until April
5th of the same year.   The issues are vigorously presented,
the charges and counter-charges are sensational in the extreme,
and are painted in the most glaring colors to which the
English language can be applied.   To support these charges

and counter-charges will demand great legal talent and much time.

To present this appeal from the order made by the trial court, it has been necessary to bring to this court a record consisting of a transcript of over four hundred printed pages, together with many additional affidavits and papers which were not printed, but which have been made a part of the record, and the preparation of exhaustive briefs.

This contest is most vigorous, and seems to be waged upon the part of each party under a conviction that the position taken is right, or must at least be maintained. This disposition always demands the most vigorous, persistent and thorough labor. To even think about $800 as a proper allowance for plaintiff's counsel in preparing her case would hardly demand a moment's consideration from those familiar with legal procedure, to determine its unreasonableness and inadequacy. The record in this case shows without any contradiction that the respondent is fortified in his defense and cross-complaint, by most able counsel. The plaintiff ought to have a fair show in this contest. We are of the opinion that the trial court greatly underestimated the plaintiff's necessity in allowing her the sum of $800 for counsel fees. A fair compensation based upon the record in this case would be $4,500. The court also allowed the plaintiff the sum of $600 for costs for the preparation of said case for trial. The record shows, without contradiction, that the respondent has had engaged for months a number of detectives preparing his case for trial, looking up evidence, hunting witnesses, and making whatever other arrangements may be necessary in the scope and power of the detective fraternity. To meet this conduct on the part of the respondent may require some examination at least of the efforts and methods adopted by the respondent, and certainly will require an examination of the conduct of the parties to this suit at the various places visited by them on their bridal tour. To do justice to the plaintiff and give her the same rights in preparing her evidence, we are also satisfied that the court has underestimated the allowance which should be made for costs, and that plaintiff should be allowed the sum

of $2,000 as costs to be expended in preparing her said case for trial.

In connection with the order for costs allowed by the trial court, the order provided that the same should be paid out by the clerk upon the order of the court only, said orders to be made "as the necessities require." This part of the order was clearly unfair and unjust to the appellant. There is no limitation upon the respondent as to the amount he may expend for costs, or how or when, and the court, in determining the question of costs *pendente lite,* should determine the amount required as near as can be, at the time the order is made in the first instance. The court has power and may properly make an order at the time costs *pendente lite* is allowed, that the party to whom the same is allowed, on the final taxation of costs, shall fully account for all costs allowed by the statute and by such person paid out of said sum. To require the appellant, each time she requires funds to pay costs *pendente lite,* to make an additional showing to the court, might require appellant to disclose to the defendant her case, and, in any event, such additional showing implies in itself that the original showing is limited, and that she must make an additional showing each time before the court will order the clerk to pay the cost money to plaintiff previously allowed. This, we think, places the plaintiff at an unfair and unequal disadvantage, and places a burden upon her which the law does not require.

The next allowance is alimony. The court allowed the appellant $100 per month. The record in this case shows that the respondent paid $200 per month from April to November the year before they were married, and $500 the month before the marriage ceremony. The respondent, thus, to some extent, fixed the social standing which his wife should occupy and for which he was willing to pay, and the fact that she is now seeking a divorce or he is seeking a divorce from her ought not to authorize him to lower her social standing or embarrass her by failing to provide for her before a final judgment is entered. We think, therefore, that the court underestimated the amount of alimony to be allowed, and that the appellant

should be allowed $250 per month alimony, commencing June 1, 1907.

The judgment in this case is reversed, and the trial court ordered and directed to make an order in accordance with this opinion.    Costs are awarded to appellant.

Ailshie, C. J., and Sullivan, J., concur.