[Civ. No. 5250.   Fourth Dist.   Jan. 10, 1956.]

PEARL PURDY, Respondent, v. ARTHUR W. PURDY, Appellant.

Blodget & Blodget and John H. Cochran for Appellant.

Launer, Chaffee & Launer for Respondent.

MUSSELL, J.—Plaintiff filed her amended complaint in this action for divorce on July 26, 1954. She alleged extreme cruelty and sought a dissolution of the marriage and award of community property, support and maintenance, costs and attorneys' fees. The trial court rendered judgment for plaintiff and awarded her support and maintenance in the sum of $150 per month and allowed her attorneys' fees in the sum of $1,375, plus costs, amounting to $47.15. Defendant appeals from that portion of the judgment awarding the attorneys' fees and permanent support and contends that the court erred in interpreting a property settlement agreement executed by the parties.

Plaintiff and defendant were married on July 7, 1943. On January 17, 1947, they separated and a divorce action was filed February 7, 1947. On March 14, 1947, an agreement, denominated property settlement agreement, was executed, determining the property rights of the parties and providing that Pearl Purdy (second party) "[w]aives all right to support, maintenance or attorneys' fees against first party." An interlocutory decree of divorce was rendered in favor of Pearl Purdy on March 18, 1947, and in July of that year the parties became reconciled. On August 23, 1948, the interlocutory decree was vacated and the then pending divorce action was dismissed. On or about March 10, 1949, the parties again separated and on that date they entered into a new property settlement agreement similar in most respects to the previous agreement executed on March 14, 1947. By the terms of this new agreement Mrs. Purdy received a sum of money and certain items of furniture and waived all rights and claims to support, maintenance or attorneys' fees as against the defendant. In August, 1951, Mrs. Purdy filed suit for separate maintenance and on October 28, 1952, this action was dismissed. In March, 1952, the parties again became reconciled, continued to live together until their final separation in June, 1954, and this action followed.

The trial court found that "There is no community property of said marriage and all property standing in the name of defendant is the sole and separate property of defendant and all property standing in the name of plaintiff is the sole and separate property of plaintiff. There is no income from any community property of the parties"; that the parties

entered into a property settlement agreement on March 14, 1947, wherein and whereby the property rights of the parties were settled as between themselves; that on March 10, 1949, the parties entered into a new property settlement agreement in which plaintiff received the sum of $9,245 and certain items of furniture and that plaintiff therein waived all rights and claims to support, maintenance or attorneys' fees as against the defendant; that the property settlement agreements of March 14, 1947, and of March 10, 1949, were fair and equitable; and the agreement of March 10, 1949, is still valid and existing except as to its executory provisions, including the provisions with respect to rights of inheritance, support and maintenance of plaintiff and attorneys' fees. The court concluded that the defendant should be ordered to pay plaintiff support and maintenance and should be required to pay plaintiff's attorneys' fees in the sum stated.

■ Where, as here, there is no reporter's transcript and the appeal is on the judgment roll alone, it will be presumed that there was evidence received by the trial court to support the findings made on the subject matter. (*Ferl* v. *Ferl*, 135 Cal.App.2d 458, 462, 463 [287 P.2d 514].) ■ We are here limited to a determination of the questions as to whether the complaint states a cause of action; whether the findings are within the issues; whether the judgment is supported by the findings and whether reversible error appears upon the face of the record. (*Estate of Larson*, 92 Cal.App.2d 267, 268 [206 P.2d 852].) See also *White* v. *Jones*, 136 Cal.App. 2d 567, 569 [288 P.2d 913].) ■ It is also the rule that the findings are to receive such a construction as will uphold rather than defeat the judgment, and wherever, from the facts found, other facts may be inferred which will support the judgment, such inference will be deemed to have been made. (*Goldberg* v. *List*, 11 Cal.2d 389, 394 [79 P.2d 1087, 116 A.L.R. 900].)

■ In the agreement of March 10, 1949, executed by Arthur Purdy as first party and Pearl Purdy as second party, it was agreed that each party waived all rights in the estate of the other; that after the date of the agreement each should have an immediate right to dispose of his or her property; that the agreement constituted a full and complete settlement of all property rights between them; that first party should pay second party $8,600 and interest; that second party should receive certain personal property as her own and that first party was the owner of certain real property therein described. It was further agreed that "Second party waives all rights

and claims to support, maintenance or attorneys' fees as against said first party.'' It is evident from the terms of this agreement that the parties were not then contemplating a reconciliation and where, as here, there is no reporter's transcript, we cannot say that the trial court erred in drawing the inference that in view of the subsequent reconciliation, there had been no waiver of the rights of second party to future support and attorneys' fees under a different set of circumstances.

It appears from the record that the parties became reconciled in March, 1952, and continued to live together until January, 1954. This reconciliation canceled the executory obligations of the agreement of March 10, 1949. (*Lloyd Corp., Ltd.* v. *Industrial Acc. Com.,* 61 Cal.App.2d 275, 280 [142 P.2d 754].) As is said in *Harrold* v. *Harrold,* 100 Cal.App.2d 601, 609 [224 P.2d 66] : ''Reconciliation and a resumption of marital relations cancel the executory provisions of a property settlement agreement. (*Mundt* v. *Connecticut Gen. Life Ins. Co.,* 35 Cal.App.2d 416 [95 P.2d 966], and cases cited therein; 9 Cal.Jur. 827.)''

Appellant argues that reconciliation does not, of itself, abrogate a valid property settlement and cites *Crossley* v. *Crossley,* 97 Cal.App.2d 627 [218 P.2d 132], in support of this argument. However, in that case the appellant contended that the property settlement agreement involved was procured under duress; that it was discharged and canceled by an executed oral agreement and that she was entitled to a share of the property acquired both before and after the marriage. The court held that the findings which lead to the judgment were supported by substantial evidence and were therefore conclusive on appeal. While the court there said that ''The fact, standing alone, that the husband and wife in this case resumed marital relations, does not terminate the property agreement,'' the court did not hold that a bona fide reconciliation and resumption of marital relations and privileges does not terminate the executory features of a property settlement agreement.

In *Margolis* v. *Margolis,* 115 Cal.App.2d 131, 137 [251 P.2d 396], it is said that ''Whether the parties intended to terminate or abrogate entirely their prior agreement was a question of fact. The resumption of marital relations is of course of material weight in arriving at such intent, but it is not of itself conclusive. (*DeVault* v. *DeVault,* 90 Cal.App.2d 15, 16 [202 P.2d 375].)''

In the instant case, in view of the record before us and the absence of a reporter's transcript of the testimony at the hearing, we cannot disturb the findings of the trial court.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.